We'll take a short break after the second case and we may take a break after one of the others. We'll begin with United States v. Davis, Mr. Mitchell. May it please the Court, three years, eight months and four days ago, in a unanimous decision, a panel of judges from this Court categorically rejected the government's entire case against Elaine Davis and reversed her convictions. And in doing so, that panel made the significant finding that the direct evidence actually favored Davis. So looking to the language of this opinion and relying on the actual evidence from that trial, Davis returned to the district court to argue that she is entitled to a certificate of innocence. But the district court determined Davis was not entitled to such a certificate because she had caused her own prosecution by her own negligent acts. Now this finding was wrong in three regards. First, putting aside the fact that the actual relevant conduct cited to by the court was not negligent, nor was it misconduct. The first issue is that the conduct cited to by the court did not cause Davis's prosecution for the simple fact that neither instances of conduct were even known to the government before it initiated prosecution. So under the plain language of 2513, there's no way either instance of conduct could have actually caused or brought about Davis's prosecution. The second issue- So it's not possible that it can cause the prosecution by causing the events. For example, her paying people to go get Medicare homebound folks. You don't think that caused part of the problem because people went around faking their homebound status? No, Your Honor, because that is- a reading of the statute so broadly has never been adopted by any court. Every court that has looked at what's required for the causal connection between the actual act and the prosecution has determined that there must be a direct causal requirement. And the court in Betts laid out the requirement that it must be some act that misleads the government as to your culpability, as to your guilt. Even Graham, the case that the district court ostensibly cited to, was looking at an exact act that was purportedly misconduct or neglect, and that act had been prosecuted as the criminal act. So the court knew there that the defendant committed the act itself. The question was, was it criminal? Was it intentional? So there is this direct relationship between the act itself and the prosecution, and no court has ever interpreted it so broadly as to say that just any negligence in general would be enough to cause or bring about- But I don't think that was negligence. I mean, she affirmatively was paying people to go find, quote, homebound. And homebound is a real complex issue here, because there are people who are genuinely homebound, and I'm very much in favor of the fact that they get service and help. But of course, you can just say that, and then you get all this extra money. And she's paying people to find that. I mean, paying extra, I'm not talking about paying her employees, of course she can do that, but this notion of paying them $100 per reference, I mean- Well, those were referral fees, Judge, and under the law, those were entirely legal as bona fide payments to employees of the home health company. I mean, what case says that? You cited a statute that just says you can pay your employees. Well, that's always true. That doesn't mean you can pay them to do something improper. So what case says that that's okay, to have contests about who's going to go find the most of them, paying them for the referrals and all of that? What says that's okay? It was discussed in a district court case in the United States versus Cornell. The court discussed it, and there's also, in our brief, we cited a case, I believe maybe out of the Sixth Circuit, that discusses similar events, and they say that referral payments are, to bona fide employees, are legal. What do you do with the fact that this statute is a waiver of sovereign immunity and therefore should be construed narrowly? Well, Your Honor, frankly, there is no ambiguity in the statute. The statute says that the actions must have caused or brought about the prosecution. And again, here, there is no causal relationship between the specific instances of conduct that were cited by the district court and the prosecution. Well, let's back up to this notion of whether she proved innocence or not. It seemed to me that the prior case that our court heard was not focused on that question. It was focused on whether there was enough evidence to support a finding of beyond a reasonable doubt, which, as you know, is a very high standard. And it has occurred in the world that somebody can be held liable for wrongful death for the exact same conduct for which they are found not guilty of murder. And that is the difference between beyond a reasonable doubt and the evidence. So explain to me how she proved that she was innocent. By pointing to the record at trial, Judge, and at trial, every, as the panel noted in its original opinion, every alleged co-conspirator testified to essentially the same fact that they did not agree with Davis to commit fraud. And for the witnesses that admitted to committing fraud on their own, they also testified that they hid these fraudulent acts from Davis and from the main office employees at Christian Home Health. In a prosecution centered around a conspiracy, I can't think of any more exonerating evidence than direct witness testimony, many of which were the government's own witnesses, saying there was no agreement. There is nothing more fundamental to a conspiracy prosecution than there not being an agreement. And so it begs the question, what more could Davis have presented? And what's important— What do you do with this fact of her having Dr. Murray sign these documents after he'd already been kicked out for his indictment? Well, what came out, as was discussed in the panel's original opinion, that the court's pointing to the signing of the documents was overcome by Dr. Murray's direct testimony when he said, I didn't agree with Davis. Dr. Murray even indicated that that was the first time that he had met Davis was when she came to his office to have him sign these 485s. But more importantly, Dr. Murray testified there was no agreement. The question was asked, Dr. Murray, was there anything in your certifications that would indicate these patients weren't homebound? And he said no. And it's also important to point out that Elaine Davis testified that she had no medical training and that she relied on the opinions of her medical professionals 100%. So the notion that there was any wrongdoing with her giving Dr. Murray this stack of papers is not supported by the record. And in fact, the only agreement that these doctors were under that came out at trial, the only agreement they had with Davis was that in the employment contract, which was to follow the professional standards, was to follow the law. And Judge, going back to the evidence at trial pointing to Davis's innocence, it's also important to note that the district court in finding that Davis did not prove her own innocence never even looked to that record. The district court solely based its determination on the fact that a finding of legal insufficiency is legally distinct from a finding of actual evidence. But it never actually looked at the record to make specific factual determinations as to whether or not that record supported Davis's innocence. Where does it say that the district court did not look at the record? Well, it never made any specific findings. Oh, there's a difference. Yes, Your Honor, and I apologize. It never made any specific findings as to whether the facts supported or cut against Davis's actual innocence, and that's what the court is required to do. The court was required to look beyond whether legal sufficiency is the same as innocence and to look at the actual evidence and make specific findings that could be reviewed by this court. But the trial court did not do that in this instance. What is our standard of review here? Standard of review, Your Honors, we, this court has never decided. We submit an abuse of discretion standard would be appropriate where the factual determinations are looked at for clear error and legal determinations are reviewed de novo, and in this case there are both factual errors and legal errors. And if this court has no more questions for me, I will yield my time. Yes. Thank you, Mr. Mitchell, and you've saved time for rebuttal, Mr. Johnson. Thank you, and may it please the Court. Joel Johnson on behalf of the United States. There's a significant gap between this court's insufficient evidence holding on direct appeal and the statutory requirement that a prevailing defendant must prove actual innocence to obtain compensatory damages. Davis has presented no evidence to bridge that gap and has failed to satisfy her burden of proof. The district court did not abuse its discretion in reaching that conclusion. I mean, our prior opinion was pretty positive to Davis. Can't he rely on that or its client rely on that? Our view is that an insufficient evidence holding by itself is not sufficient in any case, and I would point the Court to the Eleventh Circuit's recent decision in Abreu. In particular, Judge Newsom's concurring opinion, in which he explains how the charge of a court on appellate review in an insufficient evidence posture is just to answer that question, as you alluded to earlier, Judge Haynes. Appellate courts are courts of review. They do not find facts sort of as free-floating factual determinations in the first instance. They review factual records under specific legal standards. And the legal standard in the prior decision here was the insufficient evidence standard. And beyond the opinion itself, of course, there is the trial record, which Davis points to. But the trial record— What is your take on this issue? I mean, he basically says the district court didn't review the record. What's your take on that? As an initial matter, the district court incorporated the magistrate judge's report and recommendation, so all the analysis from that applies to the district court. But generally, the district court was clear both in the hearing and on the face of the order that it was making this determination on the basis of the record. And that determination was supported by several facts, circumstantial evidence in the trial record. As an initial matter, Davis hired employees that had previously worked for a health care company that had been shut down for defrauding Medicare. And she did so so those employees could bring their former patients to Christian. And I'd point the court to Samantha McGee's testimony at ROA 3719. There she testified that when Davis interviewed her for a position at Christian, Davis explicitly asked her whether she could bring over former patients from her old company. In addition to those employees, Davis hired medical directors, which were go-to doctors who could certify patients as homebound, including those who were not, in fact, homebound. And again, McGee's testimony is illuminating here. During that same interview with Davis, she noted a potential issue in bringing over the patients, that they had been certified by her old company's go-to doctors. And she was somewhat concerned that that would be an issue in bringing them over. But Davis told her not to worry because Christian had their own doctors who could do the certification. And with that infrastructure of personnel, doctors, and employees in place, Davis then asked for her employees to recruit Medicare beneficiaries. Now, is that legal? This notion of paying for these referrals, that that's legal? So per-patient payments are not legal under the anti-kickback statute. Our decision not to bring those charges in this case is not a concession that these payments were permissible. There are many reasons why there's prosecutorial discretion not to bring charges. But those payments are, in the first instance, violations of the anti-kickback statute. Now, in Davis's reply brief, and this morning, Davis has suggested that the bona fide employee exception would apply. But importantly, in this posture on appeal, that's an affirmative defense. And so she would bear the burden of proving that with evidence. Well, I'm just trying to understand that point. I totally understand that you're paying employees and they find a homebound patient. I mean, just in general, you're paying them $50,000 a year, that that is not a kickback and whatever. But she was doing something much more specific. Every referral, another $100. So it's specifically for that conduct. It's not just that the employee is generally going around finding people to serve. And so I'm just trying to figure out how that is legal, even if that is your employee. Correct, yeah. Our view is that it is not legal, that per-patient payments, as you're describing, are violations of the statute. My point about the exception was simply that that would be an affirmative defense, is that she would bear the burden. Well, and of course, you didn't charge her with that, so that shouldn't really be the issue. But my question is, does that have anything to do with causing her prosecution? Because if you create an atmosphere in which people are going to run around and find patients, regardless of whether they're homebound and call them homebound, is that creating the cause of the charge? Or does it have to specifically be direct cause, like your opponent said? We think it is sufficient for the causal requirement of the third prong. And I would point the Court to the Osborne case in the Fourth Circuit, where it's a head of a company who engaged in negligent conduct, not sufficient for embezzlement. But then the Court pointed to that precise negligent conduct to say that the third prong barred a certificate of innocence. And here, there was, as you mentioned, Judge Haynes, affirmative misconduct, the payments, but also negligence. Again, she hired the staff who had previously worked for a Medicare company shut down for defraud—or a health care company shut down for defrauding Medicare. She also met with Dr. Murray after he had been indicted and handed him a stack of forms to sign. And importantly, I think— The official's argument is that is not a direct cause of the government prosecuting her. You know, she'd shown up at the police office and goes, I think I may have screwed up and told some story. And then the prosecutor would say, well, that's a direct cause, even if it was negligent. She kind of screwed up what she said. But here he's saying that maybe caused some of the problems, but it didn't cause the prosecution. And so it's not enough to satisfy that. We think it is sufficient because insofar as it caused Christian to get more Medicare beneficiaries, some of which were not, in fact, homebound patients, that went to the data that alerted the government to the broader issues in Christian more generally. So that prompted them to bring charges against Davis and do a further investigation. And on the interpretation of the statute, too, I would just point out that the Betts interpretation from the Seventh Circuit, on which Davis relies, effectively reads the word neglect out of the statute. And it can't be squared with this Court's prior opinion in Osborne, which refers to that third prong, saying that it covers those who negligently or willfully failed to take the necessary measures to avoid conviction, and that's at 843 of the Osborne opinion. And as was mentioned earlier, because this statute is a waiver of sovereign immunity to the extent there's any ambiguity in the statute, it should be construed in favor of the government. It's basically a clear statement rule. And when Congress wants to waive sovereign immunity, it will say so clearly. If there are no further questions, we'll rest on our briefs. We would ask that the District Court's judgment be affirmed. Thank you, Mr. Johnson. Mr. Mitchell, you've saved some time for rebuttal. You didn't use all your initial time. If you want your full five minutes for rebuttal, you can have that, whatever you need. Thank you, Judge. Judge, the first thing that the government stated was that Davis hasn't put forth any evidence of her actual innocence other than the trial record. First, Davis was never actually given a chance to put forth additional evidence. When Davis filed her petition, it was referred to the magistrate with instructions to hold an evidentiary hearing if necessary. The magistrate judge immediately set it for oral argument on the actual motion. At oral argument, counsel for Davis, Mr. Larson, told the magistrate that if more evidence was needed, said that it could be decided based on the trial record and the Fifth Circuit panel's reading of that record, but if more evidence was needed, we would be happy to put it forth. And the magistrate . . . But that isn't the same thing as proffering evidence and having the judge say, I won't listen to it. I mean, the notion that you show up in court and say, I'm going to put on my case, and the judge tell me if I put on enough evidence, I'm happy to put on more, I mean, that's not the judge to coach you on how much evidence to put on. So to me, you had the hearing, and if you felt like there was evidence you wanted to put on, you should have offered it, or said, we need more time to gather the evidence, or something like that, but simply saying, well, judge, if you'd like to hear more, let us know, that's putting it in the judge's bucket to decide what your strategy should be. Well, judge, and the . . . what also occurred, though, was that the magistrate judge never even referred to the trial record, never even referred to the evidence that was actually referenced by Davis. And so the magistrate judge simply made this determination, again, that insufficiency is not innocence, and never actually looked at the evidence. And so neither the magistrate nor the district court has ever actually said what evidence they would need, or what evidence of Davis . . . what evidence overcame Davis' direct testimony that she never conspired, that she didn't know about any fraudulent acts going on, and what evidence overcame the government's own witnesses indicating that they didn't have an agreement with Davis, and stating that they hid their fraudulent acts from Christian home health and from Davis. No one has ever said what evidence would be needed to overcome that, because no one has ever made any factual findings on the record. The government also points to the testimony by McGee, but McGee's testimony can be disregarded because McGee testified that when she was testifying as to her wariness about Christian's practices, she testified that she was wary because . . . because the medical guidelines say for a patient to be admitted to home health, they have to be admitted from their doctor, the doctor that's caring for them. The Fifth Circuit panel directly rejected that contention as legally invalid. So any weight that the government wants to give to Samantha McGee's understanding of the legality of what's going on should be disregarded. The next point that the government made was that it cited to Osborne, but I believe it was actually citing to Graham, when it says that . . . when it points out the instance in which the person was found to have caused their own prosecution because they were prosecuted for an act that ended up not being criminal, but it ended up being negligent. But what's important and what distinguishes that case from this case and from this idea of paying for patients is that in Graham, the exact conduct was the exact conduct that was being indicted. The court stayed within the four corners of the indictment and said, well, this is what you were prosecuted for, this exact act. Davis was never prosecuted for violating the anti-kickback statute. That's what the court pointed out in its first opinion. It never prosecuted her for that. So there's . . . even in Graham's case, has a more direct causal relationship between the specific act at issue and the prosecution at issue. And finally, this idea of the trial court . . . You have 30 seconds more, if you'd just wrap it up. Thank you, Judge. I'll speak quickly. The idea by the government and by the trial court that Betts has an invalid reading of the third prong because it doesn't account for neglect is directly refuted by the language in Betts. The court says the relevant conduct need not be always intentional, thus the statute's reference to neglect as well as misconduct. Nonetheless, there must be either an affirmative act or an omission by the petitioner that misleads the authorities as to culpability. And Judge, because no act here misled the authorities as to the culpability, because quite frankly, Davis was never given the chance to speak up with herself, the government chose to indict her before it interviewed her, before it interviewed her employees, and before it searched a single record from Christian Home Health. She was never given the chance, and the erroneous decision to prosecute her should not weigh on her shoulders. Thank you, Judge. Thank you, Mr. Mitchell. Your case is under submission.